**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael Robert ARDLE, Defendant-Appellant.**

**No. 25791.**

United States Court of Appeals, Ninth Circuit.

Jan. 6, 1970.

Rehearing Denied Feb. 4, 1971.

John E. Lindberg (argued), of Price, Tinney, Lindberg & Gianas, Tucson, Ariz., for defendant-appellant.

John R. Lindberg (argued), Asst. U. S. Atty., Richard K. Burke, U. S. Atty., James M. Wilkes, Asst. U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before HAMLEY, BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

Prior to his jury trial on a charge of violating 21 U.S.C. § 174, illegal transportation and concealment of heroin, Ardle moved to suppress certain crucial evidence. The motion was denied, was renewed at trial and again denied, and Ardle was convicted. Ardle now appeals contending that his motion to suppress should have been granted. We affirm.

The pretrial motion was submitted on a stipulation of facts and an affidavit of Ardle. At trial, there was relevant oral testimony by customs agents. In passing upon a claim of error such as this one, an appellate court "will not ordinarily limit itself to the testimony received at a pretrial [hearing], but will also consider pertinent testimony given at the trial." Rocha v. United States, 9 Cir., 1967, 387 F.2d 1019, 1021. The following statement of facts is therefore based upon the stipulation, the affidavit, and the trial testimony.

Before 8:00 P.M. on September 30, 1969, Customs Agent Holgerson at Nogales had received a tip that one Kip Zech and another person would be travelling to Nogales, Sonora, in a green Volkswagen sedan or "bug," for the pur-

pose of purchasing heroin. The informant had not previously provided any information; in other words, the informant was not known to be reliable. Zech, however, was known to some customs agents at Nogales. The informant said that there would be a second male occupant in the car.

As the result of the tip, a lookout was posted at about 8:30 P.M. The next morning, October 1, at about 3:30 A.M., Customs Agents Ciminelli and Timilty were watching the street running into Mexico, and saw a light green Volkswagen bug, license No. LHL–299, enter Mexico from the United States. There were two young males in it, the driver and a passenger. Neither officer could identify either of the occupants, but Timilty did observe that the passenger had "long, very long, hair."

At about twenty minutes to eight that same morning, Timilty saw "a male, tall, hippie-type, long hair," making an entry from Mexico on foot. Timilty then drove over to the port of entry, where he saw the Volkswagen. It had been driven across the border at about a quarter to eight. Only one person, Ardle, was in it. Ciminelli searched the car and Ardle's person, but found no contraband. From Ardle's driver's license, Timilty learned that he was from Tucson. Timilty left and drove his car to a position about six miles north of Nogales, on the Tucson highway, where he waited. Just after he left the port of entry, Timilty saw the same long-haired man walking north on Grand Avenue in Nogales.

After Timilty left, Ardle was permitted to leave. Ciminelli followed him in an unmarked car. At the corner of Grand Avenue and Court Street, he was stopped by a red light, and lost track of the Volkswagen. He saw a man with very long hair, a "beatnik type," standing on the corner. Ciminelli had not seen the man before, but he was later identified to Ciminelli as Kip Zech.

About five minutes after Timilty took up his vigil north of Nogales, the Volkswagen came by him. It had two occu-

pants; one was Ardle, who was driving. The other was the man Timilty had seen walk across the border, and later walking on Grand Avenue. Timilty followed the Volkswagen, communicated by radio with Customs, was instructed to stop it, and did so at about Mile 18 north of Nogales. The car was taken to a nearby service station and searched. Two condoms containing heroin were found, one hidden in or under each of the turning signal lights on the front fenders. There was no search warrant, and no permission to search the car was given by its occupants.

In his briefs on appeal and his memorandum in support of his motion to suppress below, Ardle argues that the search was not a "border search" and that it could only be justified by a showing of probable cause. In its brief on appeal and its memorandum in opposition to Ardle's motion to suppress below, the government appears to concede that the search was not a "border search," arguing only that there was probable cause. At oral argument, we raised the question whether the search could be held to be a "border search" under our decision in United States v. Weil, 9 Cir., 1970, 432 F.2d 1320. We have concluded, however, that we need not decide that question because we find that the trial court correctly held that there was probable cause for the search.

In this case, the informant was not known to be reliable. Therefore, the tip could be relied upon only if the information given by the informant, and verified by the officers, was such as to give them reasonable grounds to believe that the unverified portion, i. e., that the purpose of the trip to Mexico was to obtain heroin, was also true. Here, as in Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, the portions of the tip that the officers could verify by actual observation, made it clear that the informant "had not been fabricating his report out of whole cloth." Spinelli v. United States, 1969, 393 U.S. 410, 417, 89 S.Ct. 584, 589, 21 L.Ed.2d 637. The car did enter Mexico

in the middle of the night with two male occupants, one of whom had the "very long" hair that Kip Zech had; it did re-enter after only a few hours early in the morning. And at that time there were additional facts, not stated in the tip, that would lead experienced officers to believe that the tip was correct. Only one man was in the car; another, who walked across the border and who fitted the description of Kip Zech, got into it very soon after the car and driver had been searched and allowed to proceed. This type of maneuver is not uncommon in the business of narcotic smuggling. *Cf.* United States v. Weil, *supra*. In the light of what had gone before, including the tip, the officers had reasonable cause to believe that the tip was correct, and that either Zech was carrying heroin in the car, or that there was heroin in the car which had been missed at the border when the car was there searched. *Cf.* Herreres v. United States, 9 Cir., 1969, 411 F.2d 1198, 1200.

Affirmed.