STATE of Missouri, Respondent,

v.

David E. HOHENSEE, Appellant.

No. 56318.

Supreme Court of Missouri,
Division No. 1.

Nov. 8, 1971.

Motion for Rehearing or to Transfer to Court
En Banc Denied Dec. 13, 1971.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

James H. Wesley, II, Springfield, for appellant.

HOLMAN, Presiding Judge.

Defendant was charged with burglary in the second degree and stealing. See §§ 560.045 and 560.156.[1] The amended information also charged two prior felony convictions under the provisions of § 556.280. The jury found defendant guilty of both offenses and the court (after making the required findings) fixed his punishment at imprisonment for a term of three years for each offense, the sentences to run concurrently. See §§ 560.095 and 560.110(1). Defendant has duly appealed.

On February 24, 1970, Mr. and Mrs. James L. Jones left their home (located in Springfield, Mo.) at about 6:30 p. m. When they returned three hours later they discovered that the back door had been pried open and a .22 caliber Winchester rifle and gun case, a lady's wrist watch, and some collectors coins were missing from their home. They reported the situation to the police department and two officers, including Vic Rohrer, responded to the call. At that time Officer Rohrer learned of the items that were missing. Later that night, at 1:45 a. m., Officer Rohrer was driving in the area of the Reeves Fruit Market (located about four blocks from the Jones home) and observed a car pulling away from the curb without lights. He stopped the car after it had been driven about 150 feet. As he approached the car he observed a basket of tomatoes and a gun case in the car. Officer Rohrer then searched the car and found that the case contained a .22 caliber Winchester rifle. Defendant, the driver of the car, was then taken to police headquarters where the officer searched his person and found a lady's wrist watch and some envelopes containing coins, apparently from a coin collection.

At the trial the rifle and other items were identified as those missing from the Jones home.

Defendant in his testimony admitted having possession of the items in question. He stated that he had obtained them earlier that evening when he loaned a man $35 and took the property as security. Defendant said he had played pool with this man three or four times but only knew his first name, Ray; that after his arrest he tried to find Ray but had been unable to do so. He further testified that he had stopped near the fruit market when he had seen a basket of tomatoes overturned on the sidewalk and had put them back in the basket and placed it in his car.

Defendant filed a motion to suppress the items of evidence heretofore mentioned. It was submitted on a transcript of the evidence taken on a similar motion in the magistrate court and was overruled. The testimony given by Officer Rohrer on that motion was not as detailed as his evidence at the trial. At that hearing he stated that he arrested defendant on suspicion of burglary and stealing at the fruit market and then searched the car.

■ The first point briefed is that defendant's arrest was without probable cause and hence his motion to suppress should have been sustained and the items found should not have been admitted in evidence. In ruling this point on appeal we will consider all of the evidence bearing on the question. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 [17], 39 A.L.R. 790; United States v. Ardle (9th Cir.), 435 F.2d 861.

■ We have concluded that under the facts here presented the search (if it may be called such) of the automobile was reasonable and valid. While we think there was probable cause to arrest defendant prior to the search it is not necessary to so hold in order to justify that search. "The right to search and the validity of the sei-

---

1. Statutory references are to RSMo 1969, V.A.M.S.

zure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." Carroll v. United States, supra, 267 U.S. 158, 45 S.Ct. 1. c. 287, 69 L.Ed. 1. c. 554. The officer had the right and duty to stop the car defendant was driving because it was being operated without lights. When he approached the car and saw the gun case (knowing that one had recently been taken in a burglary), he had reasonable grounds to believe that the contents of the car offended against the law and the seizure of the gun and gun case did not constitute an impermissible search. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; State v. Smith, Mo.Sup., 462 S.W.2d 425.

■ The seizure of the gun and gun case was also permissible under the "plain view" doctrine. We stated in the similar case of State v. Harre, Mo.Sup., 280 S.W. 2d 41, 43, that "the articles recovered were open to the plain view of the officer as he stood outside the automobile. A search is not made when the officer merely looks at that which can be seen." This doctrine has also been approved by the Supreme Court of the United States which stated that "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067.

■ After defendant had been lawfully arrested and taken to the police station the search of his person, during which the other items of evidence were found, was reasonable and did not violate any constitutional provision. That search was an incident to defendant's lawful arrest and a part of the routine booking process. State v. Darabcsek, Mo.Sup., 412 S.W.2d 97 [5]; State v. Phelps, Mo.Sup., 384 S.W.2d 616 [3].

As indicated, we rule the first point against defendant.

■ The next point raised by defendant is that "reversible error was committed in the trial court when the jury, while not in open court, had occasion to communicate with the court and counsel." The contention relates to the following: "The Court: Let the record show that at 6:20 p. m. the bailiff indicated to the Court that the jury wanted to ask the Court about something. The Court had the bailiff knock on the jury room door, the door was opened by juror Stover, and he said that he wanted to ask me something, wanted me to come in, and I told him that I couldn't come in. Mr. Kirby and Mr. Wampler [attorneys for defendant and the State] were present and heard what was said. Apparently they had as one question how a person could be guilty of burglary and not be guilty of stealing, that was the substance of it. I told them that they would have to follow the instructions of the Court and that that was all I could tell them. When we got through that, one lady started to say something about the witness Mrs. Jones. At that point I had to cut it off, and did cut it off, and told them I couldn't get into any discussion with them on that. Then the door was closed and that's all the Court can remember about it. If either of the attorneys want to amend it or add to it or subtract from it in any way, I'd be glad to hear it. Mr. Wampler, do you want to add anything? Mr. Wampler: No, nothing further, you've stated everything, in essence, Your Honor, that I think was discussed and I think you handled the matter as well as it could possibly be handled. The Court: Mr. Kirby? Mr. Kirby: Nothing for the defendant. I think it has been fully reported." No objection was made by defendant at the time, nor was the matter raised in the motion for new trial. We are asked to review the point under Rule 27.20(c), V.A.M.R., which provides that "[p]lain errors affecting substantial rights may be considered on motion for new trial or on appeal, in the dis-

cretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom." Without discussion, we rule that no "manifest injustice or miscarriage of justice" could have resulted from this incident and the contention is accordingly disallowed.

The final point briefed is that the trial judge should have disqualified himself in the case. Apparently, at some time prior to the trial, the home of Judge Keet had been burglarized. Just prior to the commencement of the trial the attorney for defendant stated to the court that he had just been told "that Mr. Hohensee was one of the persons whom the police attempted to tie the burglary of Your Honor's home to, and for that reason he feels that the Court may be prejudiced in the trial of this case, and that perhaps the Court would want to disqualify itself on that basis." The court and prosecuting attorney both indicated that they had no knowledge of any such efforts by the police. The court, in refusing to disqualify, stated, "I can't see why the Court should [disqualify] just because the police at one time or another might have thought this defendant might have had something to do with it. The fact is they haven't proceeded any further and that would lead the Court to believe that they have no reason to. If they have no reason to, certainly this Court has no reason to view him in any way other than as if this matter had never been brought to the Court's attention."

 This point was not raised in the motion for new trial and we are also asked to review it under Rule 27.20(c). Of course, if there had been any reasonable basis for the judge to have been "interested or prejudiced" against defendant he should have disqualified under the provisions of Rule 30.12. However, that situation did not exist. It is very possible that the police may have questioned defendant about every unsolved burglary in the Springfield area, including that of Judge Keet's home. The fact that they merely questioned him, without more, would certainly not be any basis for saying that Judge Keet (who had no knowledge of it until mentioned in court) was "interested or prejudiced." We have no hesitancy in ruling that the failure of Judge Keet to disqualify did not result in "manifest injustice" and the contention is therefore overruled.

Judgment affirmed.

All concur.